No. 113,809

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAY E. SMART,
*Appellee*,

v.

BNSF RAILWAY COMPANY,
*Appellant*.

SYLLABUS BY THE COURT

1.

To recover under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (2012), a plaintiff has the burden to prove the traditional common law elements of negligence. These include duty, breach of a duty, foreseeability of injury, and causation.

2.

In FELA cases, causation is established if it is shown that the railroad's negligence played any part in bringing about the injury.

3.

In FELA cases, the admission of expert testimony is controlled by the relevant rules of evidence and the decision of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

4.

The district court must perform its gatekeeping role for all expert testimony, not just for scientific expert testimony.

1

5.

We review de novo whether the district court actually performed its gatekeeper role under *Daubert* and whether the district court applied the proper standard in admitting expert testimony.

6.

We review the district court's decision to admit or exclude expert testimony under *Daubert* for an abuse of discretion when the district court properly performed its gatekeeper role and applied the proper legal standard.

7.

K.S.A. 2015 Supp. 60-456(b) requires the district court to make two fundamental decisions: (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) whether the proposed expert testimony is reliable and relevant, in that it will assist the trier of fact.

8.

Under *Daubert*, the district court determines the reliability of proposed scientific testimony by looking to factors such as: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance.

9.

To the extent an expert witness is relying primarily on experience rather than on scientific methodology, he or she must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

Appeal from Shawnee District Court; FRANK J. YEOMAN, JR., judge. Opinion filed March 4, 2016. Affirmed.

*Andrew H. McCue*, of Accurso Law Firm, of Kansas City, Missouri, and *Drew C. Baebler*, of Bauer & Baebler, P.C., of St. Louis, Missouri, for appellant.

*Craig M. Leff* and *Spencer L. Throssell*, of Overland Park, for appellee.

Before GARDNER, P.J., HILL and POWELL, JJ.

GARDNER, J.:  This case asks whether the district court erred in granting summary judgment to BNSF Railway Company (BNSF) based on the court's exclusion of various experts whom plaintiff Jay E. Smart anticipated would opine as to breach of duty and to causation in Smart's case brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (2012). We find no abuse of discretion in the district court's exclusion of Dr. Tyler Kress, the liability expert, so we find it unnecessary to address any error in the exclusion of the causation opinions of plaintiff's treating physicians. Accordingly, we affirm.

*Procedural background*

Jay E. Smart worked for BNSF for nearly 20 years. In 2010, he filed this case under FELA alleging he suffered cumulative trauma injuries to his neck, back, hips, legs, and arms as a result of his job-related duties as a railroad electrician in the Topeka service and maintenance terminal in Topeka, Kansas. Those duties included repetitive climbing, lifting, carrying, engaging in repetitive motion using power tools, working in confined and awkward positions, and overuse. He further alleged he was required to work "without being afforded reasonably safe conditions," which resulted in permanent injuries to his muscles, tendons, ligaments, discs, and soft tissues in his neck and arms.

BNSF moved for summary judgment in January 2014, arguing Smart could not prove the necessary elements of his FELA claim. The district court denied that motion but granted a separate motion for summary judgment based on the statute of limitations which excluded claims for Smart's injuries to his back, hips, legs, and arms. Smart does not challenge that ruling on appeal.

Smart's FELA claim for his neck injuries remained at issue. During discovery, Smart informed BNSF of the experts he intended to call at trial and described their testimony. This included Dr. Tyler Kress, a liability expert experienced in ergonomics. Dr. Kress, Smart's sole liability expert, planned to testify that BNSF had failed to provide a reasonably safe place to work and was negligent by failing to have adequate ergonomic tools and work practices to prevent injuries such as those Smart sustained. Smart also disclosed five treating physicians who planned to testify that Smart's work caused or contributed to his injuries.

After BNSF deposed Smart, Dr. Kress, and the treating physicians, BNSF moved to strike all of Dr. Kress' testimony, as well as the causation opinions of Smart's treating physicians. The district court held a hearing and granted both motions. The district court found Dr. Kress had no specific information regarding Smart's case and his "testimony is so generic that it could apply to almost any worker, in any position, anywhere dealing with a railroad." The district court excluded Dr. Kress' testimony because it lacked sufficient factual foundation to show its reliability and thus would not be helpful to the jury.

Thereafter, the parties agreed Smart could not make a prima facie case under FELA without competent expert testimony and without causation testimony. Smart then filed an interlocutory appeal, but we dismissed it as untimely. BNSF renewed its previous motion for summary judgment, and the district court granted it. Smart timely appeals,

4

alleging error in the district court's underlying decision to exclude his expert opinions on liability and causation.

*Summary judgment standard*

Review of a grant of summary judgment requires us to look to pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, to see if they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Waste Connections of Kansas, Inc. v. Ritchie Corp.,* 296 Kan. 943, 962, 298 P.3d 250 (2013). We first review the exclusion of Dr. Kress' testimony. The parties do not dispute that Dr. Kress' testimony, if admitted, would have created sufficient material disputes of fact to withstand BNSF's motion for summary judgment on the issue of negligence. Nor do the parties dispute that without Dr. Kress' testimony, Smart lacks sufficient evidence to create a material dispute of fact regarding BNSF's breach of duty. Thus, the crucial question presented on appeal is whether the district court properly excluded Dr. Kress' testimony.

*FELA requirements*

We initially address Smart's argument that FELA is a broad remedial statute that must be construed liberally to effectuate its humanitarian purpose. Smart implies that granting summary judgment is rarely, if ever, appropriate in a FELA case.

Congress enacted FELA in 1908 to provide a comprehensive scheme for railroad workplace injuries, preempting state-law tort claims. *Norfolk Southern R. Co. v. Sorrell,* 549 U.S. 158, 165, 127 S. Ct. 799, 166 L. Ed. 2d 638 (2007). Under FELA:

"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51 (2012).

We have recognized a lower standard of proof for causation in FELA actions. See *Knowles v. Burlington Northern R.R. Co.*, 18 Kan. App. 2d 608, 613, 856 P.2d 1352, *rev. denied* 254 Kan. 1007 (1993); see also *CSX Transp., Inc. v. McBride*, 564 U.S. __, 131 S. Ct. 2630, 2640-41, 180 L. Ed. 2d 637 (2011) (rejecting traditional proximate cause standard in favor of more expansive causation standard; finding it sufficient that railroad's negligence played "'any part'" in producing the injury). "It is firmly established that questions of sufficiency of evidence for the jury in cases arising under FELA in state courts are determined by federal rules." *Norton v. Norfolk Southern Ry. Co.,* 350 S.C. 473, 567 S.E.2d 851 (2002). The relaxed causation standard has prompted one circuit to note that "numerous FELA actions have been submitted to a jury based upon . . . evidence scarcely more substantial than pigeon bone broth." *Harbin v. Burlington Northern R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990).

While it is true that under FELA the quantum of evidence sufficient to present a jury question of causation is less than it is in a common-law tort action, the "relaxed causation standard under FELA does not affect [plaintiff's] obligation to prove that [the employer] was in fact negligent." *Volner v. Union Pacific R. Co.*, 509 Fed. Appx. 706, 708 (10th Cir. 2013) (quoting *Van Gorder v. Grand Trunk Western R.R., Inc.,* 509 F.3d 265, 269 [6th Cir. 2007]). We agree with the reasoning of those courts that have concluded that the relaxed causation standard under FELA and the standard for admission of expert testimony "are distinct issues" that "do not affect one another." *Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 503 (9th Cir. 1994); see *Bowers v. Norfolk*

*Southern Corp.,* 537 F. Supp. 2d 1343, 1352 (M.D. Ga. 2007). In other words, "the fact that FELA employs a relaxed standard of causation 'does [not] mean that in FELA cases courts must allow expert testimony that in other contexts would be inadmissible.'" *Bowers*, 537 F. Supp. 2d at 1352. Rather, the admission of expert testimony is controlled—even in FELA cases—by the rules of evidence and *Daubert.* 537 F. Supp. 2d at 1352. Accordingly, the Tenth Circuit continues to apply the standard *Daubert* analysis to expert opinions offered in FELA claims. See*, e.g., Summers v. Missouri Pacific R.R. System*, 132 F.3d 599, 601-03 (10th Cir. 1997).

Employer liability under FELA is based on the employer's negligence, not merely on the fact of the employee's injuries. *Ellis v. Union Pacific R. Co.,* 329 U.S. 649, 653, 67 S. Ct. 598, 91 L. Ed. 572 (1947). Accordingly, in order to recover under FELA, Smart had the burden to prove the traditional common-law negligence elements of duty, breach of a duty, foreseeability of injury, and causation with its attendant relaxed burden. See *Williams v. National R.R. Passenger Corp.*, 161 F. 3d 1059, 1062 (7th Cir. 1998); *Volner*, 509 Fed. Appx. at 708; *Wilson v. BNSF Railway. Co.*, No. 100,115, 2009 WL 2948656, at *5 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1105 (2010).

> "'[T]he [FELA] plaintiff must prove that the railroad, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. [Citations omitted.] The defendant's duty is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances. [Citation omitted.]' *Davis v. Burlington Northern, Inc.,* 541 F.2d 182, 185, *cert. denied* 429 U.S. 1002 (8th Cir. 1976).

> "We point out that a railroad is not an insurer. "'If [the railroad] has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then [the railroad] is not required to do anything to correct [the] condition." [Citation omitted.]' *CSX Transp., Inc. v. McBride,* 564 U.S. __, 131 S. Ct. 2630, 2643, 180 L. Ed. 2d 637 (2011)." *Davila v. BNSF Railway Co.*, No. 107,533, 2013 WL 1859208, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1201.

7

Smart thus had the burden under FELA to show a genuine dispute of material fact that BNSF breached its legal duty to Smart and that Smart's injuries had been caused by his work.

Frye *or* Daubert *test*

Although Smart's claim is pursuant to a federal statute, the state trial court must follow state procedure in determining the reliability of expert testimony. See *Russell v. Illinois Central R.R. Co.*, No. W2013-02453-COA-R3-CV, 2015 WL 4039982, at \*2-8 (Tenn. App. 2015), *appeal denied* November 25, 2015 (examining admissibility of expert FELA testimony under state rules of evidence); *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.), *cert. denied,* 525 U.S. 1017 (1998); *Abraham v. Union Pacific R. Co.*, 233 S.W.3d 13, 18 (Tex. App. 2007).

As a preliminary matter, we must determine which Kansas statute applied to the admission of Dr. Kress' testimony. At the time the district court granted BNSF's motion to strike the testimony of Smart's experts, the *Frye* test was in effect. See *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). Thereafter, the Kansas Legislature amended K.S.A. 60-456 through K.S.A. 60-458, effectively abrogating Kansas courts' long-held reliance on the *Frye* test for scientific evidence, and adopting the test found in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). After that legislative change, the district court granted BNSF's motion for summary judgment without specifically determining the admissibility of the experts' proposed testimony under *Daubert.*

Both parties agree, however, this court should apply *Daubert* in determining the propriety of the district court's exclusion of Smart's experts. Neither party claims the district court applied the incorrect test by making its initial admissibility findings under

8

*Frye,* and neither party alleges the ultimate result may have been different under either test.

Our general rule is that an appellate court "must apply the statutory law on evidence as it was at the time of the challenged evidentiary ruling." *Ohlmeier v. Jones*, 51 Kan. App. 2d 1014, 1018, 360 P.3d 447 (2015) (reviewing admission at trial of expert testimony), *petition for rev. filed* November 16, 2015; *State v. Scott*, No. 110,312, 2015 WL 5613055, at *3 (Kan. App. 2015) (unpublished opinion) (reviewing admission at trial of certificate of forensic examination); see *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013). But here, the district court's ruling on the motion to strike was a pretrial ruling in the nature of a motion in limine, so that ruling was subject to change at any time before judgment was entered in the case. See *State v. Breedlove,* 295 Kan. 481, 494, 286 P.3d 1123 (2012) ("An order resulting from a motion in limine is a temporary protective order that is subject to change during the trial."). That evidentiary ruling formed the basis for the summary judgment ruling which Smart appeals. Because *Daubert* was the correct test for admissibility of evidence at the time the district court granted BNSF's summary judgment motion, we agree that its principles and not those of *Frye* control our analysis, despite the fact that *Frye* was in effect at the time the district court initially excluded Smart's experts.

*Our standard of review for exclusion of testimony*

At the time the district court granted BNSF's motion for summary judgment, the admission of expert witness testimony was controlled by K.S.A. 2015 Supp. 60-456(b), which provided:

> "If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data;

9

(2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

We review de novo whether the district court actually performed its gatekeeper role in the first instance and whether it applied the proper standard in admitting expert testimony. See *United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (applying Federal Rule of Evidence 702). Here, the district court performed its gatekeeper role by reading the briefs on the motion to strike, conducting a hearing, and ruling on the reliability of the challenged testimony. The parties do not allege the district court applied an improper standard in excluding expert testimony. *Cf. Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245 (10th Cir. 2000) ("We do not believe, however, the bare fact that the district court did not explicitly utilize the *Daubert* analysis in admitting [the] testimony renders the admission erroneous."). *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), teaches that *Daubert* is not talismanic; it simply means that prior to admitting expert testimony, the court must insure the testimony "'is not only relevant, but reliable.'" *Kumho Tire,* 526 U.S. at 147. The court applied that standard here.

Where, as here, the district court performed its gatekeeper role and applied the proper legal standard, we review for abuse of discretion the district court's decision to admit or exclude the testimony. See *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 70, 274 P.3d 609 (2012) (An appellate court reviews the admission or exclusion of opinion testimony under K.S.A. 60-456 for an abuse of discretion.). A judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Daubert*'s requirements*

To date, no Kansas appellate court has interpreted or applied K.S.A. 2015 Supp. 60-456, as revised. In the absence of controlling authority, we look to the substantively identical federal rule, Federal Rule of Evidence 702 (F.R.E. 702). See *Fredricks v. Foltz*, 221 Kan. 28, 30, 557 P.2d 1252 (1976) (finding federal interpretations persuasive where state and federal rules are similar); *State v. Johnson,* 19 Kan. App. 2d 315, 318, 868 P.2d 555 (1994) (finding federal authority "uniquely persuasive" where Kansas' statute is a "mirror image" of a federal rule).

*Qualifications*

Under our statute, as under F.R.E. 702, the court must decide first whether the expert is qualified "by knowledge, skill, experience, training or education" to render an opinion. K.S.A. 2015 Supp. 60-456(b). The parties in this case do not dispute Dr. Kress's qualifications as an expert or challenge the district court's finding that Dr. Kress was qualified as an expert in ergonomics under this rule.

*Reliability, relevance, and helpfulness to the jury*

Second, the court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Nacchio*, 555 F.3d at 1241 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 [10th Cir. 2006]). Helpfulness to the trier of fact is determined by evaluating whether the testimony is relevant and whether the "'methodology properly can be applied to the facts in issue.'" *Summers,* 132 F.3d at 603. Specifically, the court must determine whether the testimony "is based on sufficient facts or data," and is "the product of reliable principles and methods," and whether "the witness has reliably applied the principles and methods to the facts of the case." K.S.A.

11

2015 Supp. 60-456(b). The district court essentially found Dr. Kress' proposed testimony deficient in these respects.

The purpose of the reliability determination is not to decide whether the expert's conclusions are correct but whether the analysis used to reach them is reliable. Reliability of an expert's testimony may be demonstrated in various ways. The law "grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U. S. at 142. Our review of a district court's reliability determination begins with understanding whether an expert is basing his or her testimony on scientific theory or, rather, on experience.

### *Testimony based on scientific theory*

Under *Daubert*, the court determines the reliability of proposed scientific testimony by looking to factors such as (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. 509 U.S. at 592-94. But these four factors are not a "'definitive checklist or test'" and a court's gatekeeping inquiry into reliability must be "'"tied to the facts"' of a particular 'case'" *Kumho Tire*, 526 U.S. at 150.

### *Testimony based on personal knowledge or experience*

In some cases, the relevant reliability concerns may focus upon personal knowledge or experience instead of the *Daubert* factors and scientific foundation. *Kumho Tire*, 526 U.S. at 150.

"On the other hand, an expert may be qualified to render opinions based on experience alone. *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). *See Bitler v. A.O.*

*Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004). To the extent a witness is relying primarily on experience, he or she 'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)." *Seifert v. Unified Gov't of Wyandotte County,* No. 11-2327-JTM, 2016 WL 107932, at *1-2 (D. Kan. 2016).

Smart contends that Dr. Kress based his conclusions not on a particular scientific theory but on his general experience and industry literature.

"*Kumho Tire* expanded the *Daubert* inquiry to cover expert testimony that is not purely scientific. The Court held that 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.' *Id.* at 142, 119 S. Ct. 1167. It nonetheless emphasized 'the importance of Daubert's gatekeeping requirement.' 526 U.S. at 152, 119 S. Ct. 1167. 'The objective of that requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' *Id.* Affirming the district court's refusal to allow an expert witness to testify, the Supreme Court 'found no indication in the record that other experts in the industry use [the expert's] two-factor test' and noted that the parties did not 'refer to any articles or papers that validate [the expert's] approach.' *Id.* at 157, 119 S. Ct. 1167. The Court reemphasized an earlier holding that 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse* dixit of the expert.' 526 U.S. at 157, 119 S. Ct. 1167 (citing *General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed.2d 508 (1997))." *United States v. Medina-Copete*, 757 F.3d 1092, 1101 (10th Cir. 2014) (finding the district court abused its discretion by admitting an expert witness to offer opinion testimony pursuant to F. R. E. 702 about the connection between so-called "narco saint" iconography and drug trafficking).

*F.R.E. 702/K.S.A. 2015 Supp. 60-456 analysis*

The court must perform its gatekeeping role for all expert testimony, not just for scientific expert testimony. See *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009). And the court has broad discretion when deciding whether to admit or exclude expert testimony. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1498 [10th Cir. 1996]) (quoting *Orth v. Emerson Elec. Co.*, *White-Rodgers Div.*, 980 F.2d 632, 637 [10th Cir. 1992]). "The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citing *Nacchio*, 555 F.3d at 1241). We note, however, that "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. While *Daubert* requires the court to act as a gatekeeper for the admission of expert testimony, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

"As part of the pretrial evaluation, the trial court . . . must determine whether the expert opinion is 'based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . .'" *First Savings Bank, F.S.B. v. U.S. Bancorp,* 117 F. Supp. 2d 1078, 1083 (D. Kan. 2000) (quoting *Kieffer*, 90 F.3d at 1499). We thus review the record to determine whether Dr. Kress explained how his experience, including the professional studies on which he relied, lead to his conclusions, why his experience provides a sufficient basis for his opinions, and how his experience is reliably applied to the facts. See Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

*Dr. Kress' testimony*

Dr. Kress opined that Smart's work exposed him to ergonomic risk factors consistent with his neck injury; that BNSF failed to design Smart's job properly to minimize hazards associated with those injuries; that BNSF failed to implement an ergonomics program to help reduce cumulative trauma disorders (CTDs); and that BNSF failed to provide appropriate awareness training regarding the risks of developing CTDs.

Prior to his deposition, Dr. Kress supplied a letter and supplemental letter which provided his written report, his findings, his qualifications and experience, a list of material he relied upon, and a list of potentially relevant literature. During his deposition, Dr. Kress was asked whether he had ever observed an electrician performing work on a locomotive. He replied,

> "I've worked on numerous matters involving electricians. As far as physically being in person and observing them doing some work, I think I probably have. Most of the time I do inspections—or I'd say a lot of the times—they are not working, it's not the nature of the inspection. But I think that over the years at some point I'm bound to have observed some of them doing their work."

He was unable to provide a specific example of when he may have observed an electrician, but he believed it would have been within the last 20 to 25 years. Dr. Kress also testified he did not recall whether he had ever visited the Topeka shops, where Smart worked. He did not allege he had seen Smart perform any part of his work. Dr. Kress did not make any detailed on-site analysis of the facility in operation.

Nor did Dr. Kress demonstrate his understanding of the work tasks routinely performed by Smart. Dr. Kress admitted that he had not interviewed Smart but had reviewed his deposition. When asked about Smart's training and job duties, Dr. Kress admitted he did not know what training Smart received, did not know the dimensions of

15

the locomotives Smart worked on, could not describe the task Smart most frequently performed, and did not know which tools Smart used most frequently.

Dr. Kress was also asked how BNSF could have redesigned the job tasks to provide Smart with a better ergonomic environment. Dr. Kress said,

"I haven't specifically been asked to do the redesign of this work environment. That's not part of my task in here is [*sic*] to specifically go in and do the redesign. I think I have given you a response with respect to what I believe the reasonable approach is to the development of cumulative trauma disorders and particularly of the neck and Mr. Smart, but I haven't gone in to give specific recommendations on use this part or use the Prosecco machine to do this, etc."

Dr. Kress was further asked if he knew a way to redesign the electrical work on locomotives so the workers were never in awkward postures. Dr. Kress testified,

"I'm not saying that it should be redesigned such that he's never in awkward postures. But I do [*sic*] believe that? Yes, there are absolutely ways in which you can access and gain access to these areas such that the posture isn't assumed and the risk factors aren't assumed as much as he has to do regularly."

Throughout his deposition, Dr. Kress never provided specific examples of what BNSF did wrong or could have done better in Smart's case, or in the case of any locomotive electrician. Instead, he admitted he was not "claiming that a reasonable or a better ergonomics program would have prevented [Smart's] injuries."

Dr. Kress alluded to industry literature regarding appropriate engineering controls and BNSF's failure to implement them, but Dr. Kress admitted he was not sure whether any of them were relevant to electricians who worked for a railroad. Dr. Kress neither identified any literature he reviewed specifically for this case nor showed how the over 20,000 pages of literature referenced in his report related to this case. Some are facially

16

irrelevant and seemingly outdated. See, *e.g.*, "1948 AAR Report on Knee Cartilage Injuries." Dr. Kress did not show what methodology he used to determine the liability of BNSF or how that methodology was consistent with those described by the authors and experts whose papers Dr. Kress referenced in his report. Nor did he cite any studies showing that the degree of posture, repetition, and force to which Smart was subjected at his workplace was ergonomically unsafe.

Dr. Kress did not purport to have conducted any study, in accordance with the literature he referenced, to determine the magnitude, duration, or frequency of the risk factors that allegedly contributed to Smart's CTD. But such literature demonstrates that causation of CTDs and the degree of various risks specific workstations might possess can be measured, tested, and analyzed. To achieve reliability, the analysis should include a method for measuring a worker's exposure to the relevant risk factors such as force, posture, repetition, and vibration. The scientist should then compare the exposure to known human capabilities to arrive at a probability conclusion. See Bernard, Musculoskeletal Disorders and Workplace Factors: A Critical Review of Epidemiologic Evidence for Work-Related Musculoskeletal Disorders of the Neck, Upper Extremity, and Low Back (1997) (1997 NIOSH Study). Dr. Kress did no such thing.

After reviewing the depositions and hearing arguments on the motion, the district court granted BNSF's motion to strike Dr. Kress' expert opinions because "his testimony does not meet the standard for admissibility in Kansas, and will not be helpful to the jury." In support of its decision, the district court found that "[Dr. Kress'] testimony is so generic that it could apply to almost any worker, in any position, anywhere dealing with a railroad." In its letter decision dated May 7, 2014, the district court found that Dr. Kress did not claim to know "that negligence was involved, or even might have been involved, on behalf of the BNSF Railway, Mr. Smart, or on the part of anyone else." The district court concluded: "The witnesses should be allowed to testify with respect to what they know about. They cannot be allowed to testify about what they can only offer some

17

speculation." We agree that Dr. Kress' opinions were conclusory and were not shown to be supported by scientific evidence or by his experience. Dr. Kress' testimony, not linked to Smart's particular workplace or the particular tools Smart used, was so general that it lacked reliability and helpfulness to the jury.

We understand that the F.R.E. 702 inquiry, and thus the K.S.A. 2015 Supp. 60-456 inquiry, is a flexible one. And we acknowledge that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances." *Garza,* 566 F.3d at 1199. But despite the flexibility granted to district courts, the text of our statute requires them to ensure that proffered expert testimony is based on sufficient facts or data and is the product of reliable principles and methods, and that the witness has reliably applied the principles and methods to the facts of the case. K.S.A. 2015 Supp. 60-456, see *Medina-Copete*, 757 F.3d at 1103 (so stating as to F.R.E. 702[b] and [c]). These criteria were not met here. An expert cannot substitute generic experience for relevant data. The record reflects a complete absence of data relative to the facts of this case supporting Dr. Kress' testimony, and no showing that he applied to those facts a reliable principle and method to reach his conclusions.

Because nothing in the record provides the necessary connection between Dr. Kress' experience and his conclusions, we conclude that Dr. Kress' "opinion evidence [was] connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire,* 526 U.S. at 157. Having independently reviewed Dr. Kress' deposition and report as well as other matters of record, we find the district court did not abuse its discretion by granting BNSF's motion to exclude his testimony.

*Need for expert testimony*

We briefly address whether Smart needed expert testimony to establish negligence in this case, as it is unclear whether Smart concedes this point.

18

"Whether expert testimony is necessary to prove negligence is dependent on whether, under the facts of a particular case, the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation from the standard. See *Juhnke,* 6 Kan. App. 2d at 748." *Gaumer v. Rossville Truck and Tractor Co.*, 41 Kan. App. 2d 405, 408, 202 P.3d 81 (2009), *aff'd* 292 Kan. 749, 257 P.3d 292 (2011) (finding the standard of care of the seller of a used hay baler is outside the ordinary experience and common knowledge of the jury and beyond the capability of a lay person to decide); see *Williamson v. Amrani,* 283 Kan. 227, 245, 152 P.3d 60 (2007).

Smart's theory of liability is that his workplace involved unreasonable exposures to ergonomic risk factors, resulting in various degenerative conditions in his neck. The conclusion of liability in this case is not one within the common knowledge of lay persons, who do not know whether Smart, while working as a railroad electrician in Topeka, was unreasonably exposed to risk factors known to the employer such as force, posture, repetition, and vibration. Nor would a jury know whether BNSF was or should have been aware of conditions creating a likelihood that Smart, in performing his job duties, would suffer CTD. Smart's case is similar in this respect to FELA cases which have found that expert testimony is necessary to establish that a railroad has breached its duty to provide its workers with a reasonably safe workplace by exposing them to ergonomic risk factors. See, *e.g., Doty v. Illinois Cent. R. Co*., 162 F.3d 460, 461-63 (7th Cir. 1998) (granting summary judgment where no expert testified to railroad's liability in providing unsafe ergonomic conditions in the workplace); *Stasior v. National Railroad Passenger Corp*., 19 F. Supp. 2d 835, 853 (N.D. Ill. 1998) (granting summary judgment where proposed expert testimony regarding occupational risk factors and working conditions was not reliable). We find that without the testimony of Dr. Kress, Smart is unable to show BNSF breached a legal duty owed to him.

19

*Conclusion*

Smart cannot show the necessary element of liability of BNSF absent Dr. Kress' testimony. Accordingly, we find it unnecessary to reach Smart's argument that the court erred in precluding his treating physicians from testifying as to causation. Even if we agreed with that assertion, Smart's failure to present some evidence raising a genuine issue of material fact as to the negligence of BNSF compels the grant of summary judgment to BNSF.

Affirmed.