NOT DESIGNATED FOR PUBLICATION

No. 115,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of

PHILLIP B.R. JIMENEZ, JR.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed March 17, 2017. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

POWELL, J.:  Phillip B.R. Jimenez, Jr., appeals the jury's verdict finding him a sexually violent predator. He argues the State presented insufficient evidence for a reasonable jury to make such a finding and that the State's expert testimony was inadmissible. Because the record shows the State's evidence was sufficient and that Jimenez failed to preserve the admissibility issue by failing to object for the same reason he asserts before us, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Jimenez was convicted of aggravated criminal sodomy and sentenced to 165 months in prison. On April 25, 2014, about a month before Jimenez was to be

1

released, the State filed a petition to have Jimenez civilly committed as a sexually violent predator. After a hearing the district court found that probable cause existed and ordered Jimenez to be evaluated at the Larned State Security Hospital. Dr. Krystal Dinwiddie conducted Jimenez' psychological evaluation. As Dr. Dinwiddie was completing a postdoctoral fellowship at the time, one of her fellowship supervisors reviewed and cosigned her report.

Before trial, Jimenez filed two motions. In the first, he asked the district court to apply the evidentiary test of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to the State's expert testimony. In the second, he argued the district court should exclude the State's expert testimony as inadmissible hearsay. The district court denied both motions.

At trial, Dr. Dinwiddie testified that she diagnosed Jimenez with antisocial personality disorder with schizotypal features, major depressive disorder, pedophilia, and alcohol dependence. She also concluded, after considering his actuarial test scores and other factors, that Jimenez was likely to commit repeat acts of sexual violence and had serious difficulty controlling his dangerous behavior because of these diagnoses. Dr. Michael Klemens testified he was Dr. Dinwiddie's supervisor when she evaluated Jimenez and he had reviewed and cosigned her report on Jimenez.

Jimenez testified about the underlying offense, admitting he had sodomized a 19-month-old girl while changing her diaper. While Jimenez claimed he neither wanted to nor would commit other sexually violent crimes, he also admitted to victimizing more than 20 other children over the course of his life. Dr. Bradley Sutherland had also evaluated Jimenez and testified that he diagnosed Jimenez with schizoaffective disorder, alcohol use disorder, and pedophilic disorder. Like Dr. Dinwiddie, he also considered Jimenez' actuarial test scores and other factors before concluding that Jimenez was likely

2

to commit repeat acts of sexual violence and had serious difficulty controlling his dangerous behavior.

Jimenez' only witness was Dr. Gerald Gentry. Because he did not evaluate Jimenez, Dr. Gentry only testified about the evaluations that Dr. Dinwiddie and Dr. Sutherland conducted. As expected, he criticized those evaluations. Jimenez also, based on his pretrial motions, lodged a continuing objection to the State's expert testimony as inadmissible hearsay and objected to the district court's decision not to apply the *Daubert* standard to such testimony. The district court noted Jimenez' objections and told him that if he had other objections to the evidence he still needed to make them.

The jury ultimately found Jimenez to be a sexually violent predator. Following the verdict, the district court committed Jimenez to the custody of the Secretary of the Kansas Department for Aging and Disability Services for care and treatment.

Jimenez timely appeals.

WAS THERE SUFFICIENT EVIDENT FOR THE JURY TO FIND
JIMENEZ IS A SEXUALLY VIOLENT PREDATOR?

Jimenez first claims the State's evidence was insufficient to support the jury's verdict finding him to be a sexually violent predator. When the sufficiency of the evidence is challenged, we consider, viewing the evidence in the light most favorable to the State, whether a reasonable factfinder could have found beyond a reasonable doubt that the person is a sexually violent predator. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011). We do not reweigh the evidence, evaluate witness credibility, or resolve evidentiary conflicts. 292 Kan. at 104.

In civil commitment cases filed pursuant to the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*, the State bears the burden of proving beyond a reasonable doubt that (1) the individual has been convicted of or charged with a sexually violent offense; (2) the individual suffers from a mental abnormality or personality disorder; (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder; and (4) the individual has serious difficulty controlling his or her dangerous behavior. 292 Kan. at 106; see K.S.A. 2016 Supp. 59-29a02(a)-(e); K.S.A. 2016 Supp. 59-29a07. On appeal, Jimenez attacks only the third and fourth elements.

Our review of the record shows the State presented sufficient evidence to establish these elements. Dr. Dinwiddie testified that she diagnosed Jimenez with antisocial personality disorder with schizotypal features, major depressive disorder, pedophilia, and alcohol dependence. In her opinion, Jimenez is likely to commit repeat acts of sexual violence because of these diagnoses. She also testified that because of his personality disorder and mental abnormalities, Jimenez has serious difficulty controlling his dangerous behavior. Dr. Sutherland, likewise, testified that he diagnosed Jimenez with schizoaffective disorder, alcohol use disorder, and pedophilic disorder. These diagnoses significantly increase, in Dr. Sutherland's opinion, the likelihood that Jimenez will commit repeat acts of sexual violence. Dr. Sutherland also opined that Jimenez is seriously unable to control his dangerous behavior.

Jimenez argues that a reasonable jury would not have accepted Dr. Dinwiddie's opinions due to her inexperience, noting that she had only a temporary psychologist's license and had conducted only one other sexually violent predator evaluation. But at the time Dr. Dinwiddie evaluated Jimenez, she had earned a doctoral degree in psychology and was in the process of completing a postdoctoral fellowship, which is why she had only a temporary license. Dr. Klemens, who was Dr. Dinwiddie's fellowship supervisor when she evaluated Jimenez, met with her twice a week. By the time Dr. Dinwiddie

4

offered her expert opinion at trial, she had completed her fellowship, was employed as a clinical psychologist for the Minnesota Department of Human Services, and had conducted over 50 psychological interviews. More importantly, given the jury's verdict, the jury evidently found Dr. Dinwiddie credible. We are bound by that determination. See 292 Kan. at 104.

Jimenez also argues that the conclusions of the State's experts are unreliable because they criticized the actuarial tests that they scored. The experts testified, however, that actuarial tests are not meant to be considered standing alone but merely serve as a baseline, and the experts testified that they considered other factors and circumstances in reaching their respective conclusions. For instance, Dr. Dinwiddie noted that Jimenez' pedophilia abnormality made him likely to reoffend based on his self-described history of sexually deviant behavior toward children, his report of experiencing sexual arousal by children, his offense pattern, and his diminished capacity to form healthy, close relationships with people his age. His alcohol dependence also increases his likelihood to reoffend because he offended while under the influence of alcohol and reported that alcohol made him feel untouchable or invincible.

Jimenez finally argues that we should consider his own testimony and the testimony of Dr. Gentry. Specifically, Jimenez testified that he did not want to commit deviant acts in the future and explained why he would not. In addition, Dr. Gentry, a more experienced psychologist than the State's experts, criticized Dr. Dinwiddie's and Dr. Sutherland's evaluations. Despite hearing Jimenez' claims and Dr. Gentry's testimony and criticisms, however, the jury apparently concluded that the State's experts were more reliable. It is not our place to reweigh this evidence. 292 Kan. at 104. The record ultimately shows that a reasonable factfinder could have found that the State met its burden of proving beyond a reasonable doubt that Jimenez is a sexually violent predator. The State's evidence was sufficient to support the jury's verdict.

WAS THE STATE'S EXPERTS' TESTIMONY ADMISSIBLE UNDER *FRYE*?

Jimenez also claims that the State's expert testimony was inadmissible under the evidentiary standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). When the admissibility of evidence is questioned, we review the district court's decision for abuse of discretion. *In re Care & Treatment of Hay*, 263 Kan. 822, Syl. ¶ 17, 953 P.2d 666 (1998).

At trial, Jimenez objected to the State's expert testimony on hearsay grounds and on the basis that such testimony was not admissible when applying the *Daubert* evidentiary standard. The district court ruled that *Frye* was applicable and overruled the objection. The district court also held that such testimony was admissible under an exception to the hearsay rule contained in K.S.A. 2016 Supp. 59-29a06(c). Jimenez never objected on the grounds that the State's expert testimony was inadmissible under *Frye*, which he seems to acknowledge.

Until mid-2014, Kansas had always applied the *Frye* test to the admission of scientific expert testimony. Under *Frye*, expert scientific opinion testimony could be admitted if such evidence was generally accepted as reliable within the expert's particular field. *In re Girard*, 296 Kan. 372, 376, 294 P.3d 236 (2013). Effective July 1, 2014, in provisions of the Kansas Rules of Evidence applicable to most trials, the Kansas Legislature abrogated the *Frye* test and instead codified the *Daubert* test in K.S.A. 2014 Supp. 60-456 through K.S.A. 2014 Supp. 60-458. *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 492, 369 P.3d 966 (2016). The *Daubert* test is a multistep one: First, the court must examine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. 52 Kan. App. 2d at 494; see K.S.A. 2014 Supp. 60-456(b). Second, the court must determine whether the proposed expert testimony is both reliable and relevant—meaning that it will assist the trier of fact— before permitting the jury to assess such testimony. 52 Kan. App. 2d at 494; see K.S.A.

2014 Supp. 60-456(b). Reliability is determined by such factors as (1) whether the theory has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error associated with the theory, and (4) whether the theory has attained widespread or general acceptance. 52 Kan. App. 2d at 495; see K.S.A. 2014 Supp. 60-456(b). These four factors are not to be considered a definitive checklist but are to aid the court's gatekeeping function concerning reliability which must be tied to the facts of a particular case. 52 Kan. App. 2d at 495.

Before us, Jimenez attacks the admissibility of the State's expert testimony under *Frye*, not *Daubert*, and even concedes in his brief the State's position that *Frye* is applicable. The parties' position has some support in K.S.A. 2016 Supp. 59-29a06(c), which applies to trials to determine whether a person like Jimenez should be civilly committed as a sexually violent predator, provides its own rules for expert witnesses "[n]otwithstanding K.S.A. 60-456," the provision that now adopts the *Daubert* standard for most cases. But we need not determine whether *Frye*, *Daubert*, or even some other standard applies to trials to determine whether a person should be committed as a sexually violent predator. That's because the argument Jimenez made in the district court was that the State's expert testimony should be excluded under *Daubert*, and Jimenez does not make that argument on appeal. Therefore, Jimenez has waived or abandoned this point. See *Superior Boiler Works v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Moreover, even assuming that *Frye* was applicable at trial, Jimenez cannot get relief under the *Frye* test either because he failed to object before the district court on those grounds. A contemporaneous objection must be made to properly preserve for appeal the issue of whether the evidence satisfied the *Frye* test. See, *e.g.*, *State v. Ordway*, 261 Kan. 776, 801, 934 P.2d 94 (1997); *Ohlmeier v. Jones*, 51 Kan. App. 2d 1014, 1019-20, 360 P.3d 447 (2015). The objection must be specific, and the grounds for the objection argued on appeal must be the same as the grounds asserted at trial. *State v.*

*Reed*, 300 Kan. 494, 505-06, 332 P.3d 172 (2014). As Jimenez did not preserve the *Frye* issue for appeal, the issue is not properly before us.

Affirmed.