NOT DESIGNATED FOR PUBLICATION

No. 116,316

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF TOPEKA,
*Appellee*,

v.

NYLA S. LAUCK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT, judge. Opinion filed September 22, 2017. Affirmed.

*Eric Kjorlie*, of Topeka, for appellant.

*Charles F. Kitt*, chief of prosecution, and *Seth Brackman*, assistant city attorney, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

BUSER, J.:  This is an appeal of Nyla S. Lauck's conviction for driving under the influence of alcohol (DUI). On appeal, Lauck claims the district court committed reversible error when it excluded the testimony of her expert witness, Shawn Parcells. Parcells was prepared to testify about the effects that Lauck's asthma had on her breathalyzer test results obtained by officers during her DUI arrest. Having carefully considered the district court's order in limine, the record on appeal, and the parties' appellate briefs, we affirm the district court's ruling and Lauck's DUI conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Lauck was convicted in the Topeka Municipal Court of DUI and driving the wrong way on a one-way street. She appealed her convictions and sentences to the Shawnee County District Court.

Prior to the de novo jury trial, the City filed a motion in limine to exclude the testimony of Lauck's expert witness, Shawn Parcells. Prior to ruling on the motion, the district court held an evidentiary hearing in accord with *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). As described more fully in the analysis section, Parcells testified about his expert qualifications and expert opinions regarding how the results of the Intoxilyzer 8000 breathalyzer machine could be affected by Lauck's asthmatic condition. For its part, the City presented its own expert regarding the operation of the Intoxilyzer 8000.

After the hearing, the district court issued a very thorough and well-documented order in limine which concluded: "Mr. Parcells shall not be allowed to testify in regard to Ms. Lauck's physical condition on or about July 28, 2014, nor to render any opinions regarding the reliability or implications of testing results of an Intoxilyzer 8000." Lauck sought reconsideration of the order, but after a hearing the district court reaffirmed its prior ruling. The evidentiary issue was also raised by Lauck during trial to no avail.

At trial, the jury found Lauck guilty of alternative counts of DUI and driving the wrong way on a one-way street. With regard to the DUI conviction, the district court sentenced Lauck to 30 days in jail and assessed a $1,070 fine.

Lauck appeals.

ANALYSIS

On appeal, Lauck contends the district court erroneously excluded Parcells from testifying at trial that Lauck's asthmatic condition resulted in a false positive Intoxilyzer 8000 reading. The State counters that the district court's evidentiary ruling was an appropriate use of discretion because Lauck failed to demonstrate that Parcells was qualified to offer relevant expert testimony.

In 2014, the Kansas Legislature amended the law relating to opinion evidence, including K.S.A. 60-456(b). These amendments effectively abrogated Kansas courts' long-held reliance on the test for scientific evidence from *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and adopted the federal standard under Federal Rule of Evidence 702 based on the principles of the landmark opinion in *Daubert*.

As amended, K.S.A. 2016 Supp. 60-456(b) provides:

"If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

Appellate courts review de novo whether a district court performed its gatekeeper role and whether the court applied the proper legal standard for admitting or excluding the expert testimony. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (applying Federal Rule of Evidence 702). On appeal, Lauck does not allege that the district court failed to perform its gatekeeper role or used an improper legal standard. Indeed, the district court correctly cited to K.S.A. 2016 Supp. 60-456(b) as the

3

appropriate legal standard to use in considering whether Parcells' proposed expert testimony was admissible at trial. As a result, these matters are not before us.

The question presented is whether the exclusion of Parcells' opinion testimony was proper under K.S.A. 2016 Supp. 60-456(b). We review this question for an abuse of discretion. *State v. Seacat*, 303 Kan. 622, 641, 366 P.3d 208 (2016); *United States v. Medina-Copete*, 757 F.3d 1092, 1100-01 (10th Cir. 2014). A district court abuses its discretion if (1) no reasonable person would take the view adopted by the court; (2) the court's decision is based on an error of law; or (3) the court's decision is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Both parties agree the most relevant Kansas case relying on the *Daubert* standard adopted by K.S.A. 2016 Supp. 60-456(b) is *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 369 P.3d 966 (2016). Our court in *Smart* was the first Kansas appellate court to fully address and interpret K.S.A. 2016 Supp. 60-456(b) as amended. In this regard, our court relied on Federal Rule of Evidence 702 and caselaw from the Tenth Circuit Court of Appeals because K.S.A. 2016 Supp. 60-456(b) and the federal rule share similar language. 52 Kan. App. 2d at 494; see *State v. Johnson*, 19 Kan. App. 2d 315, 318, 868 P.2d 555 (1994) (finding federal authority "uniquely persuasive" where Kansas' statute is a "mirror image" of a federal rule).

Federal Rule of Evidence 702 requires a district court to insure that the proposed expert testimony (1) has "a reliable basis in the knowledge and experience of [the expert's] discipline," and (2) is "relevant to the task at hand." *Daubert*, 509 U.S. at 592, 597; see also *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (finding that *Daubert* applies to all expert testimony). Before considering whether an expert's testimony is reliable or helpful to the trier of fact, however, "the district court generally must first determine whether the expert is qualified

'by knowledge, skill, experience, training, or education' to render an opinion." *Nacchio*, 555 F.3d at 1241; see Fed. R. Evid. 702; K.S.A. 2016 Supp. 60-456.

The district court found that Parcells was not qualified to testify as an expert at trial regarding his opinions:

"Based upon the testimony and exhibits the Court finds that although Mr. Parcells may qualify by 'knowledge, skill, experience, training or education' in many areas of scientific study relating to biological sciences, and thus, could assist the trier of fact [to] understand a fact in issue—depending on the fact in issue—but *he is not qualified to render an opinion on the precise issue ultimately to be submitted to the jury, i.e. any testing results, information, or data derived from the use of an Intoxilyzer 8000 machine administered to Ms. Lauck on July 28, 2014.*" (Emphasis added.)

In support of the district court's legal conclusion that Parcells was unqualified to state his expert opinions in this case, the district court found:

"1) Mr. Parcells does not qualify through education, experience, or training [to have] the ability to diagnose or treat medical conditions in live persons, and therefore, is not qualified to testify as to whether or not the defendant suffered from any specific physical conditions, much less, any conditions that may affect [her] ability to successfully provide an adequate breath sample for use in an Intoxilyzer 8000.

"2) Mr. Parcells is not qualified through education, experience, training, or known facts or data as to the degree, if any, the defendant suffered from any respiratory conditions such as asthma . . . at the time of the arrest and execution of the Intoxilyzer 8000 test.

"3) Mr. Parcells is not qualified through certification, education, personal experience, or training in regard to the methodology and operation of an Intoxilyzer 8000, and therefore, is not qualified to provide an opinion as to whether or not restrictive lung capacity respiratory conditions may affect—and to what extent—the accuracy of an Intoxilyzer 8000 testing procedure.

5

"4) Mr. Parcells is not qualified through education, personal experience, training, or known facts or data to form an opinion that an increased airway bloodflow of lung tissue exhibited by suffer[ers] from certain lung conditions will affect the percentage of alcohol content in exhaled air, nor that such changes if such even exist, vary from measurable blood alcohol percentages measurable by an Intoxilyzer 8000, his opinion being speculative and based upon hearsay material from other sources."

With particular focus on Parcells' professional credentials, the district court noted:

"Mr. Parcells has a Bachelor of Science degree from Kansas State University qualifying him as a pathology assistant, which was accompanied by a number of internships and supportive service positions in various coroner offices. He has a Master's degree in anatomy and physiology from a chiropractic college. He clearly does have knowledge, skill, training, and education as a pathology assistant and experience in a supportive position to physician pathologists, but is not a medical doctor nor licensed to practice medicine."

On appeal, Lauck does not dispute the district court's recitation of Parcells' professional credentials. Rather, Lauck emphasizes the importance of Parcells' work in forensic sciences, including the collection and interpretation of slides of lung tissue at autopsy, and that he is "a regular contributor as a forensic consultant to the Nancy Grace Show on HLN." As a consequence, Lauck argues that Parcells' credentials are sufficient "where we are talking about medical causation and effects of a medical condition resulting in a false positive concerning the test for alcohol consumption."

We disagree with Lauck's contention. As the district court evaluated Parcells' qualifications:

"It's not whether Mr. Parcells is an expert, the question is, is he an expert as to facts and issues that are relevant to this case. The issue in this case is not the removal and analysis

6

of tissue from dead bodies or cellular biology or things which he could look at a slide and say based on—you know, I believe that this is the cell of such and such, et cetera."

While Parcells proposed to testify that certain pulmonary conditions could artificially inflate the results of a breath test sample, there was no showing that Parcells had the knowledge, education, or training to analyze or interpret what effect, if any, a particular person's lung condition has on that individual's breath alcohol content as revealed by an Intoxilyzer 8000.

Moreover, Lauck acknowledges that Parcells had no knowledge about the nature or extent of her asthmatic condition or had any knowledge or expertise regarding the workings of an Intoxilyzer 8000. At the *Daubert* hearing, Parcells testified that he believed Lauck had asthma based on her physician's prescriptions for medications Parcells asserted were often prescribed for individuals with asthma. Moreover, Parcells said he would not testify about the Intoxylizer 8000 and "trust[ed] that the Intoxylizer was working properly." On cross-examination, the City established that Parcells was not certified to operate the Intoxylizer 8000 or any other kind of breathalyzer machine.

Parcells' expert opinion testimony required knowledge, skill, experience, training, or education in how Lauck's breath, when sampled by an Intoxilyzer 8000 for the presence of alcohol, would provide an inaccurate reading simply because of her pulmonary condition. This opinion testimony required expert qualifications in both pulmonary medicine and the science, operation, and testing parameters of breathalyzer machines. Parcells' qualifications were lacking in both subject areas. We are convinced the district court did not err in finding that Parcells was not qualified to testify as an expert on the critical issue of Lauck's breath alcohol content at the time of her DUI arrest.

Given our conclusion that Parcells was not qualified to testify as an expert in this case, Lauck's appeal necessarily fails. For the sake of completeness, however, we will

7

also review the district court's ruling that Parcells' opinions were not reliable as expert testimony.

As noted earlier, to determine if expert testimony is reliable, both K.S.A. 2016 Supp. 60-456(b) and Federal Rule of Evidence 702 require district courts to consider whether (1) "the testimony is based on sufficient facts or data"; (2) it is "the product of reliable principles and methods"; and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

When considering the reliability of scientific testimony in particular, courts often consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Daubert*, 509 U.S. at 592-94. These factors are not a "definitive checklist or test," and a court's inquiry regarding reliability must be "tied to the facts" of the case. *Kumho Tire Co.*, 526 U.S. at 150.

At the *Daubert* hearing, Parcells testified that "[Lauck's] body [was] giving the [breath] machine a reading that [was] different from a healthy, normal individual, because of her pulmonary anatomy and physiology." Parcells attributed this variance to Lauck's asthma, and stated that "studies have shown that asthmatics do give off a higher reading in the breath test than what they truly have in their blood alcohol content."

Although Parcells claimed to base his theory on scientific studies, he specifically referenced only two during his testimony. The first, a study from the United Kingdom in the Journal of Respiratory Medicine, studied a breathalyzer machine that Parcells asserted was similar to the Intoxilyzer 8000. According to Parcells, this study showed that people with COPD and asthma "may have difficulty in providing evidential breath samples." The second study referenced by Parcells was by Dr. Michael Hlastala published in the

8

Journal of Applied Physiology, which Parcells characterized as a "[h]eavily" peer reviewed source. Parcells testified this article was relevant to Lauck's case because it discussed the potential for biological factors to "raise or lower" a person's breath alcohol.

The district court questioned the studies referenced by Parcells, as well as his methodology, writing:

> "[Parcells] asserts literature in the forensic/medical/biology field indicat[ing] that persons suffering from lung diseases may not be able to provide adequate breath samples to satisfy the testing protocols of an infrared spectrometer. He cites a fifteen year-old article from the United Kingdom published in the Journal of Respiratory Medicine which concluded that persons with lung diseases 'may have difficulty in providing evidential breath samples using the Lion Intoxilyzer 6000 UK . . . .'
>
> "The article was admitted at hearing only for showing what information he based his opinion on and not that of [a] learned treatise nor any other basis of the truth of the matter asserted therein. The article's relevance, even if considered to be a learned treatise, has limited, if any, relevance in the instant case as there is insufficient information from which to determine the similarity of the Lion Intoxilyzer 6000 UK and the Intoxilyzer 8000 nor the similarity of definition of what is considered to be an 'evidentiary sample.' . . .
>
> "Mr. Parcells then notes lung diseases and/or other chronic inflammatory conditions are characterized by increased vascularity or bloodflow to surfaces of lung tissue. His pathology training may qualify him to identify such inflammation conditions in tissue samples and/or to describe how such process works. However, he then makes what appears to the Court to be a theoretical leap to a conclusion unsupported by any testing, data, literature, learned treatise, etc., that increased vascularity of the surfaces of the lung tissue will cause the transfer of alcohol into expelled breath in proportions higher than that existing in the coexisting alcohol/blood ratio. That specific concept is not addressed by any of the works he provided as exhibits. It appears to the Court to be an opinion formed more from suspicion or speculation than the product of reliable research or data."

We are persuaded that the district court was correct in concluding that Parcells' testimony was not reliable. In particular, with regard to the facts and data upon which Parcells based his opinion, we agree with the district court that Parcells' proffered "opinion is his own creation, unsupported by facts or data gleaned from any type of studies he performed or reviewed."

In summary, we hold the district court did not err in excluding Parcells' testimony. First, Parcells was not qualified as an expert by knowledge, skill, experience, training, or education to render an opinion on the issue of Lauck's breath alcohol content at the time of her DUI arrest. Second, Parcells' proposed opinion was unreliable because it did not meet the three requirements of reliability provided in K.S.A. 2016 Supp. 60-456(b).

Affirmed.