NOT DESIGNATED FOR PUBLICATION

No. 119,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WESTERN SURETY COMPANY,
*Appellee*,

v.

T&L ZARDA INVESTMENTS, LLC,
LISA A. ZARDA, Individually and as Trustee,
and TIMOTHY J. ZARDA, Individually and as Trustee,
*Appellants*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed September 13, 2019. Affirmed.

*John M. Duggan* and *Dustin D. Rucinski*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellants.

*Noemi F. Donovan* and *James S. Kreamer*, of Baker Sterchi Cowden & Rice, LLC, of Overland Park, for appellee.

Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.

PER CURIAM: A Johnson County jury found that T&L Zarda Investments, LLC, Lisa A. Zarda, individually and as trustee of the Lisa Ann Zarda Revocable Trust Agreement, and Timothy J. Zarda, individually and as trustee of the Timothy J. Zarda Revocable Trust Agreement (collectively the Zardas), breached an indemnity agreement with Western Surety Company. The indemnity agreement was required to obtain a performance bond from Western Surety to ensure the payment of excise tax to the City of

1

Lenexa for the development of the Bristol Ridge Subdivision. In addition to rendering a verdict in favor of Western Surety, the jury returned a verdict against the Zardas on their claims.

On appeal, the Zardas contend that Western Surety's claim is barred by the statute of limitations. Similarly, they contend that Western Surety waived its rights and is equitably estopped from asserting a claim for breach of the indemnity agreement. The Zardas also contend that the district court erred in admitting certain evidence at trial, including the terms of the settlement agreement with the City of Lenexa and the testimony of the City's attorney. Finally, the Zardas contend that the jury instructions misstated the law or confused the jurors. Finding no reversible error and that the parties received a fair trial, we affirm.

FACTS

The history of this case can be traced to 1999, when the City of Lenexa initially approved the Bristol Ridge Subdivision located near 83rd Street and Woodland Drive. At that time, the City and the original developer—Plantation, LLC—entered into a development agreement. Among other things, the development agreement required Plantation, LLC to obtain a performance bond to guarantee payment of an excise tax relating to required improvements on Woodland Drive. On February 15, 2000, the City of Lenexa and Plantation, LLC entered into Addendum No. 1 to the development agreement, which extended the time to:  (1) pay the excise tax owed; (2) complete the improvements on Woodland Drive adjacent to the subdivision, or (3) post a performance bond for the cost to complete the Woodland Drive construction.

On June 15, 2004, Bristol Ridge, LLC, purchased the Bristol Ridge Subdivision project from Plantation, LLC, and became the developer on the project. As part of the transaction, Bristol Ridge, LLC executed Addendum No. 2 to the development agreement

2

in which the City of Lenexa extended the requirement to pay the excise tax—or otherwise fulfill the terms of the agreement—for an additional year. One of the members of Bristol Ridge, LLC was T&L Zarda Investments, LLC. In turn, Timothy and Lisa Zarda were the only members of T&L Zarda Investments, LLC.

In order to secure a performance bond for the project, the Zardas asked their insurance agent, Cretcher Heartland, LLC, for assistance. On May 27, 2004, a General Agreement of Indemnity was executed by T&L Zarda Investments, LLC; Timothy J. Zarda, individually; Lisa A. Zarda, individually; Timothy J. Zarda, Revocable Trust Agreement; and Lisa Ann Zarda, Revocable Trust Agreement. Under the terms of the General Agreement of Indemnity, the Zardas agreed that they had "a substantial material or beneficial interest" in obtaining a performance bond to be issued for the project. They also acknowledged that they understood that the execution of an indemnity agreement was "a condition precedent to the execution of" the performance bond.

Specifically, the indemnity agreement provided, in part:

"2. The [Zardas] will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefore, including, but not limited, to fees of attorneys . . . and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event the Company deems it necessary to make an independent investigation of a claim, demand or suit, the [Zardas] acknowledge and agree that all expense attendant to such Investigation is included as an indemnified expense. In the event of payments by the Company, the [Zardas] agree to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of the [Zardas'] liability therefore to the Company.

3

"3. Payment shall be made to the Company by the [Zardas] as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor. Such payment shall be either equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its sole judgment, shall deem sufficient to protect it from loss. The Company shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement. If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the [Zardas] will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral security to the Company for such liability or loss."

After the Zardas executed the indemnity agreement, Western Surety issued a Performance Bond to the City of Lenexa in the amount of $229,461. Timothy J. Zarda signed the bond, dated June 17, 2004, on behalf of T&L Zarda Investments, LLC. The Performance Bond listed T&L Zarda Investments, LLC, as the Developer of the Bristol Ridge Subdivision. It also stated that T&L Zarda Investments, LLC, "is obligated to provide this bond for the purpose of ensuring payment of the excise taxes due on the first and second plat of the Bristol Ridge residential subdivision . . . for construction of a portion of Woodland Drive . . . ." Moreover, the bond stated that once the Developer had "fulfilled and completed" its duties under the development agreement, "this obligation shall be and become null and void; otherwise it shall remain in full force and effect."

The Performance Bond further provided:

"Whenever Developer is declared by City to be in default under the Agreement, the City having performed City's obligations hereunder, the Surety shall either promptly remedy the default or shall within fourteen (14) days from the date of written notice from the City pay to City sufficient funds in the amount of this bond and other costs and damages for which the surety may be liable hereunder."

4

Because the excise tax had still not been paid, the City of Lenexa reached out to the managing member of Bristol Ridge, LLC, in the summer of 2009 in an attempt to negotiate another addendum to the development agreement. It appears that this attempt was unsuccessful. The following year, Bristol Ridge, LLC, assigned its rights in the project to Woodland Road Investors, LLC. Although the members of the new limited liability company were substantially the same as those of Bristol Ridge, LLC, it does not appear that the Zardas are members of Woodland Road Investors, LLC. Likewise, it does not appear that Woodland Road Investors, LLC, was required to post a bond to replace the one obtained by the Zardas from Western Surety.

On May 18, 2012, the City of Lenexa made an initial demand under the Performance Bond on Western Surety. After the matter remained unresolved for several months, the City declared T&L Zarda Investments, LLC to be in default on its obligations relating to the development on December 12, 2012. At the same time, the City notified Western Surety that it had taken this action. A few weeks later, on December 27, 2012, the City filed a lawsuit against T&L Zarda Investments, LLC, and Western Surety seeking to recover $229,461 in excise taxes plus interest, attorney fees, and costs.

Western Surety filed its answer to the City of Lenexa's petition on February 27, 2013. In addition, Western Surety asserted a cross-claim against T&L Zarda Investments, LLC. Subsequently, T&L Zarda Investments, LLC filed a cross-claim against Western Surety and a third-party petition against its agent. In particular, T&L Zarda Investments, LLC, asserted claims for breach of contract, negligence arising out of the procurement of the bond, negligent supervision, and negligent misrepresentation.

On March 19, 2013, Western Surety filed a third-party petition against Timothy J. Zarda, individually and in his capacity as trustee of the Timothy J. Zarda Revocable Trust; and Lisa A. Zarda, individually and in her capacity as trustee of the Lisa Ann Zarda Revocable Trust, under the terms of the indemnity agreement. On May 24, 2013,

5

Timothy and Lisa Zarda filed their answers to Western Surety's third-party petition. In addition, they asserted counterclaims against Western Surety, alleging Western Surety had breached its contractual obligations including its duty of good faith and fair dealing. Later, Western Surety demanded collateral from each of the indemnitors but none was provided.

On March 4, 2014, the parties participated in mediation. Ultimately, Western Surety paid the City of Lenexa the sum of $100,000; T&L Zarda Investors, LLC, paid the City $20,000; and Cretcher Heartland, LLC, paid $5,000 to the City. As a result, the City of Lenexa's claims against Western Surety were dismissed, and the Zardas' claims against Cretcher Heartland, LLC, were dismissed. Western Surety did not dismiss its claims against the Zardas, and they did not dismiss their claims against Western Surety.

On October 20, 2017, the district court denied Western Surety's motion for summary judgment and ordered that the case proceed to trial. The district court held a final pretrial conference on November 8, 2017. In the Pretrial Order, which was entered on November 13, 2017, the district court ordered that it was to "supersede the pleadings and control the future course of this action unless modified to prevent substantial injustice."

During a four-day jury trial held from November 13-16, 2017, Western Surety sought damages from the Zardas in the amount of $100,000, which was the amount it paid to the City of Lenexa to resolve the claim under the Performance Bond. In addition, Western Surety sought to recover $209,311.92—through September 30, 2017—for the attorney fees and costs associated with defending against the City's claim and in enforcing the General Agreement of Indemnity. Western Surety also claimed additional fees and expenses incurred after September 30, 2017. The Zarda parties sought $172,000 in damages, which were limited solely to the attorney fees it incurred in the litigation of this matter.

6

After deliberation, the jury returned a verdict in favor of Western Surety on its claim for breach of the indemnity contract in the amount of "$309,311.92 and ongoing." Furthermore, the jury returned a verdict against the Zardas on their claims. On February 15, 2018, the district court entered judgment in favor of Western Surety for $309,311.92. Western Surety filed a posttrial motion seeking its attorney fees, costs, and expenses incurred through the disposition of this case. The Zarda parties filed a timely notice of appeal on March 6, 2018, and an amended notice of appeal on March 19, 2018.

ANALYSIS

*Statute of Limitations, Waiver, and Equitable Estoppel*

On appeal, the Zardas contend that the statute of limitations, waiver, and equitable estoppel bar Western Surety's claim that they breached the General Agreement of Indemnity. In response, Western Surety argues that the Zardas did not adequately preserve these issues for appeal. We agree.

Generally, issues not raised before the district court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). There are, however, several exceptions to this general rule. These exceptions include: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

If an issue raised on appeal was not raised below, the party raising the issue must explain why it is properly before the court under Kansas Supreme Court Rule 6.02(a)(5)

7

(2019 Kan. S. Ct. R. 34). A party who fails to comply with this rule risks a ruling that the issue was improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). As our Supreme Court has found, this rule is to be strictly enforced. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

At this outset, it is important to recognize that the statute of limitations, waiver, and estoppel are affirmative defenses that must be expressly pled. K.S.A. 2018 Supp. 60-208(c)(1)(F), (P), (Q); see *Evergreen Recycle v. Indiana Lumbermen Mut. Ins. Co.* 51 Kan. App. 2d 459, 478, 350 P.3d 1091 (2015). An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the [petition] are true." Black's Law Dictionary 528 (11th ed. 2019). Affirmative defenses must be pled in a defendant's answer. See K.S.A. 2018 Supp. 60-208(c)(1). "A defendant failing to assert an affirmative defense waives it. [Citations omitted.]" *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011).

Although this case was pending before the district court for more than four and a half years, the Zardas never filed a dispositive motion seeking a determination that the statute of limitations—or any other affirmative defenses—barred Western Surety's claim for indemnification. Furthermore, the Zardas did not assert the statute of limitations as a defense against Western Surety's indemnification claim in the Pretrial Order. It is well-settled that "the pretrial order is the ultimate determinant as to the legal issues and theories on which the case will be decided. [Citation omitted.]" *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009).

Consistent with Kansas law, the Pretrial Order entered by the district court in this case expressly provides that "this Pretrial Order shall supersede the pleadings and control the future course of this action unless modified to prevent substantial injustice." See K.S.A. 2018 Supp. 60-216(e); *Unruh*, 289 Kan. at 1191. After scrutinizing the Pretrial

Order, we find that the only mention of the statute of limitations related to the City's claim against Western Surety on the Performance Bond—a claim that had previously been settled—and not on Western Surety's indemnification claim. Specifically, the Zardas asserted the following issue of law in the Pretrial Order: "Whether the affirmative defense of the statute of limitations barred *the City of Lenexa's claim on the Bond*." (Emphasis added.)

The burden is on the party raising an issue on appeal to designate an adequate record on appeal. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Here, the Zardas have failed to produce an adequate record to establish that it preserved the issue of whether the statute of limitations barred Western Surety's claim under the indemnification agreement for appeal. We find nothing in the record to indicate that the district court was given the opportunity to rule on this issue before, during, or after the trial. Thus, we conclude that the Zardas have failed to preserve the issue of whether the affirmative defense of the statute of limitations barred Western Surety's claim for breach of the General Agreement of Indemnity.

Similarly, we find the affirmative defenses of waiver and equitable estoppel have not been preserved for appeal. Just as they failed to do regarding the statute of limitations issue, the Zardas failed to present these issues to the district court for ruling. Once again, the Zardas filed no dispositive motions in order to give the district court the opportunity to rule on these theories. Likewise, the Zardas failed to object at trial to the fact that the district court did not include these affirmative defenses in the jury instructions and further failed to ask the district court to rule on these legal theories at the close of evidence or after the trial. Accordingly, we conclude that the Zardas have also failed to preserve the issue of whether the affirmative defenses of waiver and equitable estoppel barred Western Surety's claim for breach of the General Agreement of Indemnity.

Even if the Zardas had properly preserved these affirmative defenses for appeal, we find that these legal theories would fail on the merits. Based on our review of the record on appeal, we find that Western Surety's claim for breach of the indemnity agreement is not barred by the applicable statute of limitations. Likewise, a review of the record reveals that Western Surety did not waive its claim nor is equitably estopped from asserting a claim for breach of the indemnity agreement.

The interpretation and application of a statute of limitations is a question of law. Accordingly, our review is unlimited. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 472, 15 P.3d 338 (2000). As the parties recognize, a written contract is subject to a five-year statute of limitations. K.S.A. 60-511(1). Regardless of when the breach may be discovered or when it is discoverable, a cause of action for breach of a written contract accrues at the time of the breach. *Dunn v. Dunn*, 47 Kan. App. 2d 619, 628, 281 P.3d 540 (2012). In other words, a breach of contract claim accrues "when a contract is breached by the failure to do the thing agreed to irrespective of any knowledge on the part of plaintiff or of any actual injury it causes. [Citation omitted.]" *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42 (1990), *modified on other grounds on denial of reh'g* 247 Kan. 699, 803 P.2d 205 (1990).

By the time this case finally made its way to trial, the only remaining parties were Western Surety and the Zardas. Western Surety's claim was based on the alleged breach of the General Agreement of Indemnity executed by the Zardas to induce Western Surety to issue a Performance Bond in favor of the City of Lenexa "for the purpose of ensuring payment of the excise taxes due on the first and second plat of the Bristol residential subdivision . . . ." Western Surety's breach of contract claim was not based on the Zardas' failure to meet the conditions set forth in the Bristol Ridge development agreement or the subsequent addendums to the agreement.

In Kansas, a surety is defined as one "'who binds [itself] for the payment of a sum of money, or for the performance of something else, for another who is already bound for such payment or performance.' [Citation omitted.]" *Hartford v. Tanner*, 22 Kan. App. 2d 64, 70, 910 P.2d 872 (1996). On the other hand, an "indemnity" is "[a] duty to make good any loss, damage, or liability incurred by another." Black's Law Dictionary 918 (11th ed. 2019). As such, the Performance Bond issued in this case was executed to protect the City of Lenexa while the General Agreement of Indemnity was intended to protect Western Surety in the event that it had to make payment to satisfy the Zardas' obligation to the City.

The Zardas argue that the breach of the contract occurred "by June 16, 2005," after they failed to fulfill their obligations under the Second Addendum to the development agreement. However, this position ignores the fact that Western Surety's claim is for the Zardas' alleged breach of the General Agreement of Indemnity. Here, the Performance Bond issued by Western Surety and approved by T&L Zarda Investments, LLC, provides:

> "Whenever Developer is declared by City to be in default under the Agreement, the City, having performed City's obligations hereunder, *the Surety shall either promptly remedy the default or shall within fourteen (14) days from the date of written notice from the City pay to City sufficient funds in the amount of this bond* and other costs and damages for which the surety may be liable hereunder." (Emphasis added).

Moreover, the General Agreement of Indemnity provides:

> "3. Payment shall be made to [Western Surety] by the Indemnitors *as soon as liability exists or is asserted against the Company*, whether or not [Western Surety] shall have made any payment therefor. Such payment shall be either equal to the larger of (a) the amount of any reserve set by [Western Surety], or (b) such amount as the [Western Surety], in its sole judgment, shall deem sufficient to protect it from loss."

11

Here, the plain language of the Performance Bond provided that no action was required by Western Surety until the City declared the developer in default. A clear declaration of default is a precondition to a surety's liability under a performance bond. See *U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 57 (2d Cir. 2004); *L & A Contracting Co. v. Southern Concrete Services, Inc.*, 17 F.3d 106, 110-11 (5th Cir. 1994) (clear declaration of default is a precondition to a surety's liability). In *L & A Contracting Co.*, the United States Court of Appeals for the Fifth Circuit explained:

> "After a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee. Given the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond." 17 F.3d at 111.

In the present case, a review of the record shows that the City of Lenexa declared T&L Zarda Investments, LLC, to be in default on December 12, 2012. Prior to that time, on April 10, 2012, the City had sent a letter to T&L Zarda Investments, LLC, demanding payment of the excise taxes in 30 days. The demand letter also indicated that it would exercise its option to proceed against the Performance Bond if they were not paid within 30 days. The Zardas agreed that they would make payment to Western Surety as soon as liability existed. Thereafter, on May 18, 2012, the City sent an e-mail to Western Surety making a formal claim on the Performance Bond in the amount of $229,461.

Accordingly, Western Surety had no obligation to perform until sometime in 2012—either when the claim was made against it or when the City of Lenexa declared T&L Zarda Investments, LLC, to be in default. It is undisputed that the City filed this lawsuit against Western Surety and T&L Zarda Investments, LLC, on December 27, 2012. In response, Western Surety filed a cross-claim asserting breach of the indemnity agreement against T&L Zarda Investments, LLC, on February 27, 2013, and

12

subsequently filed third-party claims for breach of the indemnity agreement against Timothy J. Zarda, Lisa A. Zarda, and their trusts on March 13, 2013. Thus, we conclude that the claims asserted against the Zardas for breach of the indemnity agreement were filed well within the applicable five-year statute of limitations as set forth in K.S.A. 60-511(1).

Turning to the issue of waiver, we do not find that Western Surety waived its right to assert against the Zardas for breach of the indemnity agreement. We note that waiver and estoppel often overlap and are closely related principles of law. Nevertheless, they are not identical because "waiver is the intentional surrender of a right, while estoppel is the legal inability to assert a right." *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017). In other words, waiver is the voluntary relinquishment of a known right. See *Prather v. Colorado Oil & Gas Corp.,* 218 Kan. 111, 117, 542 P.2d 297 (1975); *Jones v. Jones*, 215 Kan. 102, 116, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974). However, equitable estoppel focuses on a party's detrimental reliance on another party's conduct. *Steckline Communications*, 305 Kan. at 770.

"Waiver must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right. Mere silence of a party is not waiver unless such silence is under circumstances requiring the party to speak. [Citation omitted.]" *Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992). Here, the Zardas argue that Western Surety waived its right to pursue a breach of the indemnity agreement by failing to assert a claim after they failed to pay the excise tax during the summer of 2005. However, as previously discussed, Western Surety's right to bring an action for breach of the indemnity agreement did not ripen until the City of Lenexa made claim on the Performance Bond in 2012.

There is nothing in the record to suggest that Western Surety was notified that a claim was being made by the City of Lenexa on the Performance Bond prior to May 18, 2012. Within a matter of months after the City made its demand on Western Surety, it brought a breach of contract claim against the Zardas. Hence, because the Zardas have failed to establish that Western Surety had a right to bring an action for breach of the indemnification agreement prior to 2012, there can be no waiver.

For the same reasons, we do not find that Western Surety's claim for breach of the indemnification agreement is barred by the doctrine of equitable estoppel. To prevail under this doctrine, the Zardas must show: (1) Western Surety reasonably expected them to act in reliance on a promise, admission, or silence when it had a duty to speak; (2) they reasonably acted in reliance on that promise, admission, or silence; and (3) the refusal to enforce the promise, admission, or silence would result in a substantial injustice. *Bouton v. Byers*, 50 Kan. App. 2d 34, 41, 321 P.3d 780 (2014); see *Byers v. Snyder*, 44 Kan. App. 2d 380, 391, 237 P.3d 1258 (2010). The doctrine of equitable estoppel does not apply where the facts are ambiguous or subject to more than one construction. *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 (1999).

The Zardas have failed to point to evidence in the record to support the elements of an equitable estoppel defense. In particular, they have not shown that Western Surety had a duty to inform them that the Performance Bond was still active. In fact, we note that the plain language of the Performance Bond states that until the obligations under the development agreement had been completed, the Performance Bond "shall remain in full force and effect." Furthermore, the Zardas have failed to show that Western Surety had a duty to inform them of the status of the bond. See *Hartford Fire Insurance Co. v. P & H Cattle Co., Inc.*, 451 F. Supp. 2d 1262, 1278-79 (D. Kan. 2006) (duty of good faith in an indemnity agreement applies to surety's conduct relating to bond claim).

14

Likewise, the Zardas do not show that Western Surety made a promise or admission that they reasonably relied upon to their detriment. The Zardas and their attorneys could have simply read the language of the Performance Bond to determine if it was still active. Regardless, we find nothing in the record to establish that Western Surety made a representation to the Zardas that the Performance Bond had expired or that they had been relieved of their obligations under the development agreement. Even if there was evidence of a promise or admission, the Zardas fail to show that their reliance was reasonable in light of the plain language of the Performance Bond or that they were prejudiced by anything done by Western Surety. Thus, a defense under a theory of equitable estoppel lacks merit.

*Evidentiary Issues*

The Zardas contend that the district court committed reversible error by admitting improper evidence at trial. First, the Zardas argue that the district court erred by admitting a Settlement Agreement and Release into evidence at trial in violation of K.S.A. 60-452. Second, the Zardas argue that the district court erred by allowing an attorney for the City of Lenexa to give opinion testimony at trial. In response, Western Surety contends that the district court did not abuse its discretion in admitting the Settlement Agreement and Release into evidence nor in allowing the attorney for the City to give opinion testimony.

Generally, the admission of evidence lies within the sound discretion of the district court. As such, we normally review a district court's admission of evidence for abuse of discretion. *Garrett v. Read*, 278 Kan. 662, 667, 102 P.3d 436 (2004). However, we exercise de novo review in determining whether a statute excludes the admission of certain evidence. If an exclusionary rule does not prohibit the introduction of the evidence, then we return to an abuse of discretion standard of review. *Haley v. Brown*, 36 Kan. App. 2d 432, 440, 140 P.3d 1051 (2006) (citing *Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 451, 124 P.3d 57 [2005]).

Prior to trial, the Zardas unsuccessfully sought the district court to enter a motion in limine excluding all references to the Settlement Agreement and Release at trial. However, the Zardas preserved this issue for appeal by objecting to the admission of the Settlement Agreement and Release during the trial. Additionally, the district court recognized the Zardas' continuing objection to the admission of or reference to the settlement agreement.

Under K.S.A. 60-452, evidence that a person has furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or claims to have sustained loss or damage is inadmissible to prove his or her liability for the loss or damage of any part of it. Then, K.S.A. 60-453 provides: "Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act or service in satisfaction of a claim, is inadmissible to prove the invalidity of the claim or any part of it." Accordingly, the admission of evidence regarding settlement agreements for the purpose of proving or disproving liability is generally prohibited. See *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 721, 869 P.2d 598 (1994). As our Supreme Court has found, the reason for these exclusionary rules is to encourage settlement. See *Ettus v. Orkin Exterminating Co*., 233 Kan. 555, 567, 665 P.2d 730 (1983).

In support of its argument on appeal, the Zardas rely on *Hess v. St. Francis Regional Med. Center*. In the *Hess* case, the plaintiff in a negligence action settled with several parties prior to trial, and proceeded to trial against the one remaining defendant. The potential liability of the remaining defendant was directly related to the liability of the settling defendants, and the jury was instructed to compare the fault of the settling defendants in addition to the fault of the remaining parties. Our Supreme Court held that evidence regarding the settlement agreement should not have been admitted because of the effect it could have on the jury's comparison of fault. 254 Kan. at 724-25.

16

We find the holding in *Hess* to be distinguishable from the present case. The settlement in *Hess* was for the same claim being asserted against the remaining defendant. Here, the Settlement Agreement and Release addressed and resolved the City's claim under the development agreement and was not intended to address the claims asserted by Western Surety or those asserted by the Zardas arising out of the indemnity agreement. In fact, the Settlement Agreement and Release stated that Western Surety and the Zardas "explicitly preserve any claims they have between each other as are set forth in their respective third party petition, cross claims and/or counterclaims" and it provided that nothing in the agreement should "be considered, relied upon, or construed as an admission of liability . . . ."

The fact that Western Surety had paid the City of Lenexa $100,000 under the Performance Bond was both relevant and material to its claim for relief under the General Agreement of Indemnity executed by the Zardas. See *First Hays Banshares, Inc. v. Kansas Bankers Surety Co.*, 244 Kan. 576, 577-78, 769 P.2d 1184 (1989) (settlement agreement in underlying matter was admitted as evidence in indemnity case). Furthermore, it is relevant and material in determining whether Western Surety acted in good faith. See *Hartford v Tanner*, 22 Kan. App. 2d 64, Syl. ¶ 6, 910 P.2d 872 (1996) ("A surety seeking to enforce an indemnity agreement has an implied obligation of good faith."). Here, the Zardas not only defended this action based on an alleged lack of good faith on the part of Western Surety but also brought claims against the surety for breach of its duty to act in good faith.

In *Westfield Ins. Co. v. Harvest Const. Gen. Contracting, Inc.*, No. 105,855, 2012 WL 5519096, at *4 (Kan. App. 2012) (unpublished opinion), this court found:

> "Factors to be considered in determining the reasonableness of the surety's conduct generally include the thoroughness of its investigation, the cooperation of the indemnitor, and the attempts made to mitigate the claims. *Hartford Fire Ins. Co. v. P & H*

*Cattle Co., Inc.*, 451 F. Supp. 2d 1262, 1279 (D. Kan. 2006) (citing *Tanner*, 22 Kan. App. 2d at 76), *aff'd* 248 Fed. Appx. 942 (10th Cir. 2007) (unpublished opinion)."

Here, the evidence of the parties' settlement with the City of Lenexa is relevant and material to the reasonableness of the steps taken by Western Surety to resolve the claim and to mitigate the damages. As noted above, the City had demanded $229,461 for payment of the excise taxes plus interest, attorney fees, and costs. However, as a result of the settlement, the City accepted a compromise of $125,000 from Western Surety, the Zardas, and Cretcher Heartland, LLC.

Because we find the evidence regarding the settlement to be relevant and material to the claims asserted by Western Surety and the Zardas against one another, the determination of whether such evidence should have been excluded falls within the district court's sound discretion. Under K.S.A. 2018 Supp. 60-445, a district court has discretion to exclude evidence where it finds its probative value is outweighed by its potential for producing undue prejudice. See *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

Although we recognize that evidence of the settlement could be considered prejudicial to the Zardas, we do not find that it was unduly prejudicial based on the claims and defenses presented at trial. As such, we do not find that it was an abuse of discretion by the district court to have admitted the evidence under these circumstances. This is particularly true in light of Timothy Zarda's testimony that he thought the case was "going to be over" after the settlement was reached with the City of Lenexa. As indicated above, the plain language of the Settlement Agreement and Release—which was signed by Timothy Zarda—refutes this testimony because paragraph 6 expressly states:

"PRESERVATION OF CLAIMS BETWEEN WESTERN SURETY AND T&L
ZARDA PARTIES:  Notwithstanding the releases set forth in ¶¶ 2-4, Western Surety and

18

the T&L Zarda Parties, explicitly preserve any claims they have between each other as are set forth in their respective third party petition, cross claims and/or counterclaims filed in the Lawsuit as of [the date of the mediation]."

Accordingly, we conclude that the district court did not err as a matter of law nor did it abuse its discretion in admitting evidence of the parties' settlement with the City of Lenexa.

The Zardas next contend that the district court erred in allowing an attorney for the City of Lenexa to give her opinion as to legal matters when she testified at trial. It is undisputed that the attorney was not designated as an expert witness. Rather, she was called as a fact witness to testify regarding the City's claim for excise tax that ultimately led to the execution of the Performance Bond and General Agreement of Indemnity. Specifically, the Zardas argue that the attorney rendered legal conclusions and testified about her interpretation of various contractual agreements.

The admissibility of evidence in the form of an opinion is controlled by K.S.A. 2018 Supp. 60-456, which reads:

"(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b).

"(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

19

Accordingly, K.S.A. 2018 Supp. 60-456(a) permits the admission of opinions by a fact witness if the district court finds they are rationally based on the perceptions of the witness and may be helpful to a clear understanding of their testimony. The district court is given wide discretion in its gatekeeper role to admit or exclude such testimony. *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 493-94, 369 P.3d 966 (2016). Pursuant to K.S.A. 2018 Supp. 60-456(d), the opinions of a lay witness are admissible even though they may embrace ultimate issues. *Schmeck v. City of Shawnee*, 232 Kan. 11, 31, 651 P.2d 585 (1982).

The rules relating to expert witnesses and lay witnesses are closely related. A witness may provide an opinion on an ultimate issue only insofar as the opinion will help the jury interpret technical facts or assist the jury in understanding the material in evidence. A witness may not pass on the weight or credibility of the evidence, as those matters fall solely within the jury's role. *State v. Richard*, 235 Kan. 355, 361, 681 P.2d 612 (1984).

The attorney for the City of Lenexa was asked whether there was any way for a developer to avoid excise taxes. Before she could respond, the Zardas' attorney objected on the basis that it was "expert-witness-type [of] testimony" and she had not been endorsed as an expert. The district court overruled the objection. Later, defense counsel was provided the opportunity to provide a more thorough record of his objection to the attorney's testimony and argued that had she been designated as an expert witness, he would have deposed her prior to trial. Counsel also argued that there is a danger the jury will give "undue influence to her testimony" because she is an attorney. Western Surety responded that the attorney's testimony simply reflected the position taken by the City with respect to the payment of the excise taxes as well as its claim against the Performance Bond.

20

In ruling that the attorney's testimony was admissible, the district court recognized the difficulty when a professional is called as a fact witness. In particular, the district court noted that a professional "cannot help but rely upon his experience and expertise when answering some of the most simple questions, so it becomes a dual role of both expert and fact witness." After finding that it had wide discretion regarding the admissibility of witness testimony, the district court determined:

> "The witness so far has testified what the City's position is . . . there has not been anything earth-shattering, by any means, as to her interpretation, which . . . does not require an expert to make an assessment of . . . the construction agreement and the bond agreements. The language is plain and I think that our jurors would be able to understand it.
>
> "She has given a perspective that would be consistent with the common position taken by most people in that situation, even if they were not an attorney. There's not been any question the Court believes that are clearly giving an opinion as to something that would be outside both question of fact and of expert."

The Zardas' attorney continued to argue his objection even after the district court had rendered its ruling. In particular, defense counsel added that in his opinion the attorney for the City had crossed the line when she testified that the Performance Bond and the development agreement had not expired. The district court noted the continued objection but did not alter its ruling.

As indicated above, witnesses may render opinions under K.S.A. 2018 Supp. 60-456(a) so long as they are rationally based on the perception of the witness, helpful to the jury in understanding the testimony, and are not based on specialized knowledge. Here, the attorney's opinion testimony was rationally based on her personal observations of the position taken by the City of Lenexa. Regardless of whether the City was correct in the position it took, the attorney's opinions were helpful to the jury because they explained the actions taken by the City to pursue the Zardas for collection of the excise taxes and in

21

making a demand on Western Surety on the Performance Bond. Finally, as the district court noted, the attorney's opinion testimony did not invade the province of the jury because the various agreements were not difficult to understand. Thus, we do not find that the district court abused its discretion in allowing the attorney for the City to present opinion testimony.

*Jury Instructions*

Next, the Zardas contend that the jury instructions misstated the law in several ways and these misstatements resulted in inconsistent verdicts. In reviewing jury instructions, we engage in a three-step process:  (1) we must determine whether there is appellate jurisdiction and whether the issue has been preserved for appeal; (2) we must consider the merits of the claim to determine whether error occurred below; and (3) we must assess whether the error requires reversal, *i.e.*, whether the error can be deemed harmless. Furthermore, whether a party has preserved a jury instruction issue affects our inquiry at the third step. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

K.S.A. 2018 Supp. 22-3414(3) mandates that no party may assign as error the giving or failure to give an instruction unless the party objects to the instruction before the jury retires to consider its verdict unless the instruction or the failure to give an instruction is clearly erroneous. When we apply the clear error standard at the third step because a party failed to object, we will only reverse the district court if an error occurred and if we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming clear error has the burden to demonstrate the necessary prejudice. 307 Kan. at 318. In making the clear error determination, we must consider the effect of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

22

Here, the Zardas argue that Instruction No. 20, which was entitled "Verdict Form B—Zarda Defendants' Claims Against Western Surety"—was erroneous because it failed to properly instruct the jury on their good faith and fair dealing claim against Western Surety. Before addressing the merits of the Zardas' argument, we note that they objected to Instruction No. 20 on the ground that it did not adequately address their theory of lack of consideration. The Zardas also submitted an alternative verdict form instruction for the district court's consideration, but it did not include the concept of good faith and fair dealing. Thus, we find that the Zardas failed to raise the argument below that they now raise on appeal and we must review Instruction No. 20 under a clearly erroneous standard of review.

As given by the district court, Instruction No. 20 reads:

"Verdict Form B—Zarda Defendants' Claims Against Western Surety

"We, the jury, present the following answers to the questions submitted by the court:

"1. Do you find there was a contract between Western Surety and any of the Zarda defendants?

"Yes ___ No ___

"2. Do you find there was a breach of the contract between Western Surety and any of the Zarda defendants?

"Yes ___ No ___

"If you answered 'Yes' to Question 2, continue to Question 3.

"3. What damages do you find were sustained by plaintiff Western Surety as a result of the Zarda defendants' breach [of] contract?_____

"4. Agreement on each of the above questions was by ten or more jurors?

"Yes ___ No ___"

The Zardas assert that Instruction No. 20 was "obviously" erroneous because it fails to articulate that "their claim is for breaching the duty of good faith and fair dealing, not a simple breach of contract claim." The flaw in the Zardas' argument is that they never requested that the jury to be instructed regarding the theory of good faith and fair dealing on their suggested verdict form. Moreover, Western Surety points to Jury Instructions Nos. 6, 8, and 10, which set forth the Zardas' claim of "breach of obligation of good faith and fair dealing" in detail as well as what the jury should do if they found in favor of the Zardas under this legal theory.

Instruction No. 6 provides:

"Under Kansas law, a Surety must act in good faith and fair dealing with respect to their indemnity agreement.

"A Surety acts in good faith if it investigates the claim on the bond, communicates with the Principal regarding the claim, and attempts to reduce the damages claimed by the Bond Holder."

Instruction No. 8 states, in part:

"The Zarda defendants have countersued Western Surety Company for breach of contract due to Western's breach of obligation of good faith and fair dealing. The Zarda defendants contend that Western breached its obligation of good faith owed to the Zarda defendants because Western Surety did not inform the Zarda defendants that the City of Lenexa considered the surety bond to still be in effect. Further, a second invoice was sent to the Zarda defendants in error after the Zarda defendants advised Tom Quick that they would not pay the second premium. The Zarda defendant[s] contend that they did not need the bond anymore and Tom Quick said he would take care of it. The Zarda

24

defendants claim these actions precluded the Zarda defendants from obtaining a release of the Bond."

Furthermore, Instruction No. 10 reads: "If you find for the Zarda defendants, then you should award the Zarda defendants such sum as you believe will fairly and justly compensate Zarda defendants for the damages you find it sustained as a direct result of the breach of contract by the plaintiff."

We must consider jury instructions as a whole. In other words, in order to determine whether jury instructions misled the jury, we are not to focus on any one instruction. See *Siruta v. Siruta*, 301 Kan. 757, 775, 348 P.3d 549 (2015). Based on our reading of the instructions given by the district court in their entirety, we conclude that it is unlikely that the jury was confused regarding the Zardas' claims against Western Surety. Thus, the Zardas have failed to show clear error requiring reversal.

Next, the Zardas correctly point out a mistake in Question 3 of Instruction No. 20. As stated above, Instruction No. 20 clearly states "Verdict Form B—Zarda Defendants' Claims" at the top. However, Question 3 mistakenly states: "What damages do you find were sustained by plaintiff Western Surety as a result of the Zarda defendants' breach [of] contract?" It is apparent that this was a clerical error and that Question 3 should have asked, "What damages do you find were sustained by the Zarda defendants as a result of Western Surety's breach of contract?"

Nevertheless, it is important to recognize that the jury was instructed to consider Question 3 *only* if it answered "Yes" to Question 2. Accordingly, the jury only needed to answer Question 3 in the event that it found that Western Surety breached its agreement with the Zardas. However, the jury answered "No" to Question 2, finding no breach by Western Surety. Hence, there was no reason for the jury to reach Question 3 and it appropriately did not do so. See *State v. Reid*, 286 Kan. 494, Syl. ¶ 18, 186 P.3d 713

25

(2008). Under these circumstances, we find the mistake in Question 3 to be harmless and we conclude that it did not constitute reversible error.

The Zardas further contend that Jury Instruction No. 19 and Jury Instruction No. 20 were "patently inconsistent" because of the mistake in Question 3 of Instruction No. 20. Under K.S.A. 2018 Supp. 60-249(a), "a jury's findings on the essential issues submitted by way of special verdicts must be certain and definite, and must not be conflicting or inconsistent." *Rohr v. Henderson*, 207 Kan. 123, 130, 483 P.2d 1089 (1971). To determine whether the findings are conflicting or inconsistent, "the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions and issues submitted." 207 Kan. at 130.

The Zardas cite *Reed v. Chaffin*, 205 Kan. 815, 819-20, 473 P.2d 102 (1970), in which our Supreme Court found special findings to be "so inconsistent" to require reversal where one special question indicated an award of damages to the plaintiff and another special question indicating the contrary. Of course, a significant difference between the present case and *Reed* is that the jurors in this case never reached or answered Question 3 in Instruction No. 20. But in *Reed*, the jury answered both special questions—which were part of a single instruction—but did so in a "patently inconsistent" manner. As such, unlike this case, it was impossible in *Reed* to determine the intent of the jury even by reading the instructions as a whole.

Here, Jury Instruction No. 19 was clearly captioned "Verdict Form A—Western Surety's Claims Against Zarda Defendants" and Jury Instruction No. 20 was clearly captioned "Verdict Form B—Zarda Defendants' Claims Against Western Surety." Viewing the jury instructions in their entirety, we find that the jury expressly found that the Zardas breached the General Agreement of Indemnity with Western Surety and appropriately proceeded to the damage question on Verdict Form A. However, the jury expressly found no breach by Western Surety and appropriately skipped the damage

26

question on Verdict Form B. Accordingly, we conclude that the jury did not render inconsistent verdicts in this case.

The Zardas also contend that Jury Instruction No. 7 was erroneous because it did not properly inform the jury as to the respective burdens of proof borne by each party. Failing to properly inform the jury as to each party's burden of proof to prove their respective claims is reversible error because such a failure is highly prejudicial. See *Zak v. Riffel*, 34 Kan. App. 2d 93, 104, 115 P.3d 165 (2005). Because the Zardas failed to object to Instruction No. 7, we apply a clearly erroneous standard of review. *McLinn*, 307 Kan. at 318.

Instruction No. 7 states in pertinent part: "As a result of T&L Zarda's failure to pay the excise taxes to the City of Lenexa, Western Surety incurred losses and expenses and has failed and refused to indemni[fy] Western Surety." The instruction further provides: "As a result of the Zarda defendants' breach of contract, plaintiff Western Surety suffered damages . . . ." On appeal, the Zardas complain that the instruction reads that it should be assumed that they breached the indemnity agreement and that Western Surety suffered damages as a consequence.

For whatever reason, the Zardas ignore the following additional language contained in Instruction No. 7: "Plaintiff Western Surety has the burden to prove its claims are more probably true than not true. Defendant denies that it breached their contract with Western. Defendants further deny the Plaintiffs sustained damages as alleged." In addition, Jury Instruction No. 1 provides further instruction: "Burden of proof means burden of persuasion. A party that has the burden to prove a claim must persuade you that it is more probably true than not true. In deciding whether this burden has been met, you must consider all admitted evidence." These instructions were based on the Pattern Instructions for Kansas and appropriately instruct the jury on Western Surety's burden of proof for its claims. Moreover, we note that Instruction No. 8—

27

relating to the Zardas' claims against Western Surety—was similarly phrased. Thus, when viewed as a whole, we find that Instruction No. 7 was legally appropriate. See *Siruta*, 301 Kan. at 775.

Finally, the Zardas assert the district court erred by failing to give an agency instruction to the jury. The Zardas' proposed jury instructions included an agency instruction but the district court ruled that it would not submit an instruction on agency to the jury. What constitutes an agency and whether there is any substantial competent evidence supporting the relationship is a question of law. However, "where the existence of an agency is disputed, its existence or non-existence is ordinarily a question of fact for the jury to be determined on proper instructions." *CIT Financial Services, Inc. v. Gott*, 5 Kan. App. 2d 224, 230, 615 P.2d 774 (1980); PIK Civ. 4th 107.01. The Zardas point to evidence in the record showing a genuine dispute as to whether Cretcher Heartland, LLC was Western Surety's agent.

When the evidence at trial is viewed as a whole, it is evident that failing to instruct the jury as to agency does not amount to reversible error. The acts or omissions of Cretcher Heartland, LLC may have been part of the Zardas' theory that Western Surety breached its duty of good faith and fair dealing. However, the existence of an agency relationship was not a disputed issue in this case. In the pretrial order, the Zardas did not assert a claim against Western Surety for the acts of Cretcher Heartland, LLC and Cretcher Heartland, LLC was no longer a party to this action after being dismissed with prejudice as a result of the settlement.

Further, Western Surety admitted that Cretcher Heartland, LLC was its agent for the purpose of writing bonds. However, the evidence showed that Cretcher Heartland, LLC, was not the general agent of Western Surety and had no authority to act on its behalf after securing the bond. As such, the Zardas fail to show sufficient evidence to determine that the jury instruction was legally appropriate. In addition, we find any error

28

to be harmless, as the determination of Cretcher Heartland, LLC's relationship with Western Surety has little to do with the legal theories asserted by the Zardas against Western Surety. Thus, we find no indication that giving the instruction would have changed the result of the trial.

CONCLUSION

In conclusion, we note that the law guarantees to every litigant a fair—but not perfect—trial. See *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 539, 856 P.2d 1313 (1993) (citing *Schneider v. Washington National Ins. Co.*, 204 Kan. 809, 815, 465 P.2d 932 [1970]). After nearly five years of zealous litigation, Western Surety was able to prove its case to the satisfaction of the jury while the Zardas were not able to do so. Although the trial may not have been perfect, based on our review of the record on appeal, we find that it was fair to both parties. Accordingly, we affirm.

Affirmed.